Filed 9/9/14  P. v. Dyas CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GREGORY DYAS,<br><br>Defendant and Appellant. | B253217<br><br>(Los Angeles County<br>Super. Ct. No. MA060094) |

THE COURT:[*]

A jury found appellant Gregory Dyas guilty of stalking (Pen. Code, § 646.9, subd. (a)), a felony.  The jury also found true the allegations that appellant had previously been convicted of a prior "strike" (Pen. Code, § 1170.12, subds. (a)-(d)), and that he had served a prior prison term for that conviction plus separate prison terms for three other felony convictions (Pen. Code, § 667.5, subd. (b)).  During the sentencing hearing, appellant was removed from the courtroom due to his obstructive behavior.  The trial

_____

[*]    BOREN, P. J., ASHMANN-GERST, J., FERNS, J.†

†    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

court sentenced appellant to 10 years in state prison, which consisted of the upper term of three years for the stalking conviction, doubled due to the prior strike, plus four years for each of the prior prison terms. Appellant was given 337 days of presentence custody credit. The trial court also ordered appellant to pay restitution fines and assessments. As discussed below, we order the abstract of judgment amended to include a fine.

We appointed counsel to represent appellant on appeal. After examination of the record, counsel filed an "Opening Brief" in which no arguable issues were raised. On June 11, 2014, we advised appellant that he had 30 days within which to personally submit any contentions or issues that he wished us to consider. On July 7, 2014, appellant submitted a response entitled "Motion to Discover Evidence." Appellant stated that the items he sought were part of the record. Appellant's appointed counsel declared that he sent appellant transcripts of the record. On appeal, an appellant may not bring a motion seeking to discover evidence; we therefore treat it as his response, which essentially proclaims his innocence.

We have reviewed the entire record and conclude that it provides a factual basis to support appellant's conviction. The prosecutor presented the following evidence: In 2011, appellant met Zenaida McNeeley (the victim) at a liquor store in Lancaster, California. Appellant followed the victim out of the store and asked for her number. She did not give it to him at that time, but did so a few weeks later when she saw appellant at another liquor store. He called her the same day.

Appellant called once or twice after that and then stopped. A few months later, he called again and told the victim that he had been to jail for "a few tickets" and wanted to take her out. They went to dinner and a movie and had sex, but never had sex again. Appellant came by several times after that, but there was no further romantic relationship.

Sometime later, the victim discovered that appellant had lied to her about his name, his age, and where he was from; he had actually gone to school with her father and they were about the same age. She told appellant not to come by her house anymore and to stop calling her. Appellant laughed in response and said, "It's not over."

2

Before his arrest, appellant called the victim and drove by her house on a daily basis, more than 200 times altogether. She often saw his car parked down the street when she came home from work. Appellant mowed her lawn without permission; she had someone else taking care of the yard. He frequently ripped out wires from her sprinkler system. He banged on her windows and doors. In June 2013, he broke the side gate while she was home and she called the police. Appellant told her he was "going to show [her] what a stalker does." Appellant also went to the Los Angeles Zoo uninvited when the victim was there with her children and some friends. He frequently cursed at the victim, called her a "bitch" many times, and threatened to "slap the shit out of [her]." He said he was going to strangle her and hurt her children, who would have to do CPR when they found her. She believed appellant when he said he was going to strangle her. She also testified that she was afraid of appellant because "[h]e's just mean for no reason," and because he was a gang member and "[gang members] hurt other people." She was concerned for the safety of her two daughters, ages five and seven, who were living with her at the time. The victim called the police several times and was told that she could not get a restraining order without appellant's last name, which she did not know. She ultimately moved to a new home.

The victim's 11-year-old brother testified that appellant came to the house five or six times and would yell and curse. The victim's seven-year-old daughter testified that appellant came to the house, banged on the door waking her up, and used bad language.

Appellant was arrested on July 1, 2013. He told the arresting officer that the victim was "crazy," and that he had not been to her house in months. The following day while being interviewed, appellant stated that he had not spoken to the victim in over four months and had not seen her in seven months. Later that day, appellant admitted he had lied earlier, and stated that he had seen and talked to the victim a week earlier, and had called her three or four times in June.

Appellant testified on his own behalf. He stated that the victim would call him and tell him to come over, and that sometimes they would spend the day having sex. He knew the victim was unmarried and tried to be a father figure to her children. The victim

3

asked appellant to help her take care of her lawn, so he bought a lawnmower and kept the grass cut for her, sometimes while she was not home. This went on for about two years. Appellant would also fix things around the victim's house, install sprinklers, and fix sprinkler wires that her dogs had chewed up.

Appellant denied ever swearing at the victim, telling her that he would show her what a stalker does, threatening to choke her, or parking on her street while she was at work. Regarding the trip to the zoo, he stated that the victim had invited him to go with her. He parked in her garage and they took her car together with her daughters and her little sister.

Appellant explained that he was forced to join a gang when he was young, but after a friend was killed he ceased to be involved with gangs.

Neither the record nor appellant's response demonstrate the existence of any cognizable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436, 441.)

We do, however, order that the abstract of judgment be corrected to reflect the trial court's order that appellant pay victim restitution of $2,375 to the California Victim Compensation and Government Claims Board (Pen. Code, § 1202.4, subd. (f)). A copy of the amended abstract of judgment is to be forwarded by the trial court to the Department of Corrections and Rehabilitation.

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

4